IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMBUR AMES, | ) |
| Plaintiff, | ) 2:20-cv-887-NR |
| v. | ) |
| WASHINGTON HEALTH SYSTEM FOOT AND ANKLE SPECIALISTS, INC., | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

**J. Nicholas Ranjan, United States District Judge**

Plaintiff Ambur Ames sues Defendant Washington Health System Foot and Ankle Specialists, Inc., claiming that it discriminated against her based on her disability when she sought medical treatment in its office.

In May 2020, Ms. Ames had plantar warts, so she scheduled an in-person appointment at Washington Health. Of course, at that time (and even now), the country was in the midst of the COVID-19 public-health crisis. As a result, Washington Health had instituted certain policies intended to mitigate the risk presented by the virus, including a masking requirement for all patients. That masking requirement did not make exceptions for people with disabilities.

Ms. Ames suffers from tuberous sclerosis, a condition that causes abnormal cell growth and skin lesions. Because of her condition, when she wears a mask, she breaks out in a painful rash on her face. As a result, Ms. Ames received a note from a certified registered nurse practitioner that excused her from wearing a face mask.

On the day of her appointment, Ms. Ames arrived without a mask and told Washington Health about her disability. She then requested an accommodation to be seen without a mask. Washington Health denied her request and offered a telemedicine appointment as an alternative accommodation. Washington Health

believed a telemedicine appointment was an appropriate compromise based on the treating physician's experience that prescription of an over-the-counter ointment is the first treatment step in nearly all cases. Ms. Ames refused Washington Health's offer and sought treatment from another health care provider. The physician who eventually treated her plantar warts did not prescribe an ointment, but instead applied liquid nitrogen to the warts and scraped off the dead skin with a scalpel.

From this core set of facts, Ms. Ames brings claims under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. Washington Health now moves for summary judgment.

Applying the familiar standard of Federal Rule of Civil Procedure 56,[1] the Court will grant Washington Health's motion in part and deny it in part. The Court will enter judgment in Washington Health's favor on Ms. Ames's ADA claims because she doesn't have standing to bring them. As for Ms. Ames's Rehabilitation Act claim, there are genuine disputes of material fact that preclude the Court from granting summary judgment.

---

[1] Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At summary judgment, the Court must ask whether the evidence presents "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). In making this determination, "all reasonable inferences from the record must be drawn in favor of the nonmoving party and the court may not weigh the evidence or assess credibility." *Goldenstein v. Repossessors, Inc.*, 815 F.3d 142, 146 (3d Cir. 2016) (cleaned up). The moving party bears the initial burden to show the lack of a genuine dispute of material fact, and "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," summary judgment is improper. *Id.* (cleaned up).

## DISCUSSION & ANALYSIS[2]

**I.    Ms. Ames lacks standing to bring her ADA claims.**

In Counts I and II of her amended complaint, Ms. Ames asserts disability discrimination and retaliation claims against Washington Health under the ADA. ECF 15, pp. 5-9. For her relief on these claims, Ms. Ames "seeks injunctive and declaratory relief."[3] *Id.* The problem with these claims is that Ms. Ames lacks standing to bring them.

"[D]espite the fact that [Washington Health] did not raise the issue of standing in its summary judgment motion and [Ms. Ames] did not address it in [her] brief, the court can, in its discretion, sua sponte address this issue since it is jurisdictional." *Bardelli v. Allied Servs. Inst. of Rehab. Med.*, No. 14-0691, 2016 WL 5723724, at *7 (M.D. Pa. Sept. 30, 2016); *see also Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 117 (3d Cir. 1997) ("Standing is a threshold

---

[2] The Court mainly writes for the benefit of the parties, who are familiar with the factual and procedural background, as well as the record evidence.

[3] In Count I, Ms. Ames alleges that Washington Health violated Title III of the ADA. ECF 15, pp. 5-8. In Count II, Ms. Ames alleges that Washington Health violated the anti-retaliation provision of the ADA, under 42 U.S.C. § 12203. *Id.* at pp. 8-9. As is clear from the amended complaint, the retaliation claim is predicated on Title III of the ADA also, and therefore Ms. Ames's remedies for that claim are also limited to injunctive relief. *See, e.g., Corless v. Cole*, No. 13-700, 2014 WL 2892362, at *4-5 (D. Haw. June 25, 2014) ("Instead of delineating specific remedies for retaliation claims, section 12203(c) references the remedies and procedures available pursuant to 42 U.S.C. §§ 12117 ('Title I'), 12133 ('Title II'), and 12188 ('Title III')."); *Contee v. Univ. of Pa.*, No. 21-1398, 2021 WL 2661459, at *2 (E.D. Pa. June 29, 2021) ("The remedies available for a retaliation claim depend on the context. … [A] plaintiff bringing a retaliation claim involving public accommodations will have the remedies of Title III of the ADA[.]" (cleaned up)). "Under Title III of the ADA, private plaintiffs may not obtain monetary damages and therefore only prospective injunctive relief is available." *Anderson v. Macy's, Inc.*, 943 F. Supp. 2d 531, 538 (W.D. Pa. 2013) (Hornak, J.) (citation omitted). Thus, the standing analysis here applies to both of Ms. Ames's ADA claims.

jurisdictional requirement, derived from the 'case or controversy' language of Article III of the Constitution." (citation omitted)).

"To establish standing in an action for injunctive relief, a plaintiff must show that he or she is likely to suffer future injury from the defendant's illegal conduct." *Doe v. Nat'l Bd. of Med. Exam'rs*, 210 F. App'x 157, 159-60 (3d Cir. 2006) (cleaned up). Thus, this Court must "look beyond the alleged past violation and consider the possibility of future violations." *Heinzl v. Starbucks Corp.*, No. 14-1316, 2015 WL 1021125, at *5 (W.D. Pa. Mar. 9, 2015) (Mitchell, M.J.). That means that "[p]ast illegal conduct is insufficient to warrant injunctive relief unless it is accompanied by continuing, present adverse effects." *Bardelli*, 2016 WL 5723724, at *8 (cleaned up).

The trouble here is that Ms. Ames has offered no evidence of continuing adverse effects—in fact, quite the opposite. Ms. Ames already received treatment for her plantar warts, so she has no need to return to Washington Health for that issue. ECF 28-9, 24:15-17. And Ms. Ames stated that she has had no contact with Washington Health since her attempted visit and has no intention to return for treatment for any other issue in the future. *Id.* at 20:14-19 (testifying that she has had no contact with Washington Health since the day of the incident), 23:6-18, 40:11-41:2.

Even if she did intend to return, it wouldn't matter. As Ms. Ames explains in her brief, her "request that she be examined and treated like non-disabled patients, without a mask" is now standard practice "because [Washington Health] changed its policy to allow exactly what Plaintiff requested as soon as she filed suit." ECF 31, pp. 17-18. Ms. Ames claims that this policy change "in no way makes [her] claims moot." *Id.* at p. 18 n.6. But mootness isn't the right concept; standing is. And these undisputed facts, taken together, mean that Ms. Ames simply lacks standing to bring her ADA claims. *See Bardelli*, 2016 WL 5723724, at *8 (finding plaintiffs lacked

standing where "there is no evidence in the record indicating that plaintiffs intend to ever return M.B. to the dePaul School. Nor do plaintiffs contend that there is any likelihood of M.B. returning to the dePaul School, i.e., the place of the alleged ADA violation."); *Giterman v. Pocono Med. Ctr.*, 361 F. Supp. 3d 392, 406-07 (M.D. Pa. 2019) ("The court finds that the plaintiff has not sufficiently demonstrated a likelihood of future injury to establish that she has standing to seek injunctive relief. … The plaintiff's testimony … has failed to establish more than a mere possibility that she will likely be discriminated against by PMC regarding her hearing disability and she has failed to show that this discrimination is actual and imminent."); *Shaika v. Gnaden Huetten Mem'l Hosp.*, No. 15-294, 2015 WL 4092390, at *7 (M.D. Pa. July 7, 2015) ("The corrective measure taken by the defendants in the instant case shows that they are responsive to their obligations under the ADA and that there is not a substantial likelihood that the defendants will violate the plaintiff's rights under the ADA again.").

That said, just because Ms. Ames's ADA claims fail for lack of subject matter jurisdiction, that "does not mean the [Court] also lacks jurisdiction over [her] Rehabilitation Act claim." *Bardelli*, 2016 WL 5723724, at *8 (citations omitted). "[S]tanding is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996). Unlike her claims under the ADA, Ms. Ames **can** recover monetary damages under the Rehabilitation Act. *See, e.g.*, *A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 804 (3d Cir. 2007) (holding that the available remedies for a violation of Section 504 of the Rehabilitation Act "include compensatory damages, injunctive relief, and other forms of relief traditionally available under suits for breach of contract."); *Hollinger v. Reading Health Sys.*, No. 15-5249, 2016 WL 3762987, at *12 (E.D. Pa. July 14, 2016) ("[U]nlike the ADA, a plaintiff bringing a claim under the RA is permitted to seek monetary relief including compensatory damages."). Indeed, for her Rehabilitation

Act claim in Count III, Ms. Ames specifically requests "compensatory damages" and is not seeking injunctive or declaratory relief. ECF 15, p. 10. As a result, Ms. Ames's Rehabilitation Act claim does not suffer from the same standing defect as her ADA claims.

## II. There are material disputes of fact related to Ms. Ames's Rehabilitation Act claim.

Section 504 of the Rehabilitation Act states: "No otherwise qualified individual with a disability…shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794(a). "In essence, the [Rehabilitation Act] prohibits discrimination on the basis of disability by programs that receive federal funding." *Hollinger*, 2017 WL 429804, at *9.

"[T]he substantive standards for determining liability under the Rehabilitation Act and the ADA are the same." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 275 (3d Cir. 2014) (cleaned up). To establish a violation of Section 504 of the Rehabilitation Act, Ms. Ames must establish that (1) she is "disabled" as defined by the statute; (2) she was either excluded from participation in or denied the benefit of Washington Health's services, programs, or activities, or was otherwise discriminated against by the defendant; and (3) such exclusion, denial of benefits, or discrimination was because of her disability. *Hollinger*, 2017 WL 429804, at *9 (citing *CG v. Pa. Dept. of Educ.*, 734 F.3d 229, 235 (3d Cir. 2013)). For purposes of its summary-judgment motion, Washington Health does not dispute that Ms. Ames is disabled. This case therefore comes down to whether Washington Health discriminated against her, and whether that discrimination was based on her disability.

Ms. Ames alleges that Washington Health discriminated against her by failing to accommodate her disability when it refused to see her for an in-person doctor's visit without a mask. ECF 31, pp. 12-22. Establishing a claim for failure to accommodate "turns on (1) whether the requested accommodation … was reasonable; (2) whether it was necessary to assure meaningful access; and (3) whether it would represent a fundamental alteration in the nature of the program." *Matheis v. CSL Plasma, Inc.*, 936 F.3d 171, 178 (3d Cir. 2019) (cleaned up). Ms. Ames "bears the initial burden of establishing that the desired accommodation is reasonable and necessary," while Washington Health "bears the burden of showing that it would fundamentally alter the nature of the program." *Id.* (citation omitted). Each step requires an "individualized inquiry" based on the circumstances of the case. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 688 (2001).

Washington Health makes several arguments in support of its request for summary judgment, including: (1) Ms. Ames's requested accommodation was neither reasonable nor necessary to provide her with "the full enjoyment of [Washington Health's] services" (ECF 32, p. 3); (2) Ms. Ames's inability to wear a mask in its office was a "direct threat to the health and safety of others" (ECF 30, p. 8); and (3) its "mask policy [was] a legitimate safety requirement during the COVID-19 pandemic" (*id.* at p. 12).

For the reasons discussed below, the Court finds that there are material disputes of fact regarding each of these arguments.

### A. There are material disputes of fact over the reasonableness of Ms. Ames's requested accommodation.

"A modification is reasonable if it is "reasonable on its face, *i.e.*, ordinarily or in the run of cases." *J.D. by Doherty v. Colonial Williamsburg Found.*, 925 F.3d 663, 674 (4th Cir. 2019) (cleaned up). "Reasonableness is generally a fact-specific inquiry,

asking whether the specific modification is reasonable under the circumstances." *Id.* (cleaned up).

Washington Health contends that Ms. Ames's requested accommodation of waiving its masking policy is unreasonable because it would have created an unsafe environment that posed an increased risk of exposure to COVID-19 for its staff, physicians, and other patients. ECF 32, p. 4. Ms. Ames, on the other hand, argues that the accommodation was reasonable under the totality of the circumstances. ECF 31, pp. 12-22. This is a factual dispute that must be resolved by the jury.

As Ms. Ames points out, just before she visited Washington Health, the Pennsylvania Secretary of Health issued an order requiring all visitors to businesses to wear masks for entry, but noted that "individuals who cannot wear a mask due to a medical condition…may enter the premises and are not required to provide documentation of such medical condition." *Id.* at pp. 5-6. The Department of Health then released guidance consistent with that order. *Id.* at pp. 6-7. Thus, Ms. Ames's requested accommodation tracked the prevailing directives and guidance issued by the relevant public health authority, supporting a reasonable inference that Ms. Ames's accommodation request was reasonable when she made it.

Ms. Ames also disputes that she, specifically, posed the kind of danger that Washington Health argues. When she arrived on the day of her visit, there were no other patients in the waiting room, so she couldn't have presented a danger to other patients. ECF 28-7, 21:8-14. Upon arrival, Ms. Ames immediately spoke with Washington Health's staff about her medical conditions and how they make it impossible for her to wear a mask. *Id.* at 21:23-22:10. At that time, no one at Washington Health took her temperature, asked her if she had any other COVID-19 symptoms, asked her if she had been exposed to COVID-19, or made any kind of particularized assessment of her risk. ECF 28-9, 48:10-11; ECF 28-10, 15:4-12.

Washington Health points to the fact that it "did not know whether [Ms. Ames] was exposed or if she was currently infected." ECF 32, p. 4 (cleaned up). That's true, but partly because no one even asked. Under these circumstances, the Court cannot say as a matter of law that Ms. Ames's requested accommodation was unreasonable. *See, e.g.*, *Emanuel v. The Walt Disney Co.*, No. 20-4639. 2021 WL 2454462, at *5 (E.D. Pa. June 16, 2021) (rejecting defendant's contention that "the requested modification, a waiver of its face covering policy," was "unreasonable because it would create an unsafe environment" where disabled plaintiff pled that they were "neither infected with COVID-19 nor exhibiting any symptoms of the virus").

But that doesn't necessarily end the analysis. Ms. Ames is not entitled to her "preferred" accommodation if Washington Health offered a reasonable alternative accommodation to her. *See Brudnak v. Port Auth. of Allegheny Cty.*, No. 09-1304, 2012 WL 4006043, at *8 (W.D. Pa. Sept. 12, 2012) ("Simply because plaintiff did not receive what he requested … that does not mean that the [defendant's] accommodation was not reasonable."); *Hernandez v. W. Texas Treasures Est. Sales, LLC*, No. 21-96, 2021 WL 4097148, at *4 (W.D. Tex. Aug. 19, 2021) ("The ADA does not require a particular modification of services in places of public accommodation when other measures accomplish the same objective.").

On this score, Washington Health contends that the "telemedicine" appointment it offered "was a reasonable modification to [its] COVID-19 mask policy" because it afforded Ms. Ames "the ability to be examined by a physician but still protect the health and safety of [its] staff, physicians, and other patients." ECF 30, p. 8. According to Washington Health, telemedicine was particularly "appropriate" because "the initial first treatment for 95% of … plantar wart patients is a topical agent." *Id.* (citing ECF 28-10, 4:4-13). Again, however, the Court faces conflicting evidence and cannot decide whether this alternative was reasonable.

Ms. Ames testified that after she was turned away for an in-person visit, she received treatment from another physician. ECF 28-9, 20:18-216. That physician treated Ms. Ames's issue at her initial in-person visit by freezing the warts and scraping off the dead skin with a scalpel. *Id.* at 24:9-14. Based on the nature of this other treatment, there is a genuine dispute of material fact over whether the telemedicine appointment would have been reasonable for Ms. Ames.[4]

### B. There is a material dispute of fact over the necessity of Ms. Ames's requested accommodation.

The Court must next consider whether Ms. Ames's accommodation was "necessary." Construing the evidence and inferences in Ms. Ames's favor, the Court finds that it arguably was.

"In conducting this inquiry, courts have used a 'like experience' standard, meaning that public accommodations must start by considering how their facilities are used by nondisabled guests and then must take necessary and reasonable steps to provide disabled guests with a 'like experience.'" *Colonial Williamsburg*, 925 F.3d at 672. A like experience is one where the public accommodation gives disabled individuals equal opportunity to receive a like or equal benefit as nondisabled individuals. *A.L. v. Walt Disney Parks & Resorts US, Inc.*, 900 F.3d 1270, 1296 (11th Cir. 2018). In the healthcare context, whether an accommodation is "effective in affording a patient an equal opportunity to benefit from medical treatment largely depends on context, [such as] the nature, significance, and complexity of the treatment." *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 343 (11th Cir. 2012).

---

[4] Washington Health also argues in its reply that Ms. Ames's requested accommodation could have led "to a shutdown of the office for quarantining of staff and proper cleaning of the office." ECF 32, p. 4. But Washington Health cites nothing in the record to support this speculative argument.

Here, the "like experience" that Washington Health must provide to Ms. Ames is appropriate medical treatment for her presenting issue. As discussed above, there is a material dispute of fact about whether a telemedicine appointment could provide that like experience. Dr. Alissa Parker, the treating physician at Washington Health, stated that her "typical" course of treatment for plantar warts was to prescribe a topical ointment. But there are facts presented here that Ms. Ames was an atypical case, given the treatment she later obtained. There is no evidence that Dr. Parker looked at a photo of Ms. Ames's plantar warts or asked for more information about them, which create inferences from which a jury could find that Dr. Parker's treatment accommodation was deficient. ECF 28-10, 5:12-18. Indeed, if Dr. Parker, or anyone else had asked Ms. Ames, Ms. Ames could have told them that she tried over-the-counter ointment and liquid freeze and they didn't work for her. ECF 28-9, 21:7-17. And the doctor who treated Ms. Ames right after she visited Washington Health had to provide hands-on treatment. *Id.* at 24:9-14. These facts and reasonable inferences create a material dispute over the necessity of Ms. Ames's requested modification.

### C. There are material disputes of fact related to Washington Health's two defenses.

There are two "safety defenses" under the Rehabilitation Act to policies or criteria that might otherwise be discriminatory. Washington Health unsuccessfully invokes both on summary judgment.

The first defense is that a public covered entity doesn't have to make an accommodation if the accommodation poses a "direct threat." A direct threat is "a significant risk to the health or safety of others that cannot be eliminated by a modification of policies, practices, or procedures or by the provision of auxiliary aids

or services."[5] 42 U.S.C. § 12182(b)(3). "In determining whether an individual poses a direct threat to the health or safety of others, a public accommodation must make an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence, to ascertain: The nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures or the provision of auxiliary aids or services will mitigate the risk." 28 C.F.R. § 36.208(b).

In other words, "as long as Defendant conducted an individualized assessment of whether an individual poses a direct threat—not based on generalized stereotypes, but based on reasonable judgment grounded in medical knowledge and public health authorities, and based on consideration of reasonable modifications—denying that individual from the … premises does not constitute discrimination[.]" *Giles v. Sprouts Farmers Mkt., Inc.*, No. 20-2131, 2021 WL 2072379, at *5 (S.D. Cal. May 24, 2021).

The second defense is that a "public accommodation may impose legitimate safety requirements that are necessary for safe operation." 28 C.F.R. § 36.301(b). These "[s]afety requirements must be based on actual risks and not on mere speculation, stereotypes, or generalizations about individuals with disabilities." *Id.*

What both defenses have in common is that to be entitled to them, a defendant must make an individualized determination based on the circumstances of the case at hand. It cannot simply rely on generalized information.

Washington Health argues that Ms. Ames's "refusal to wear a mask in [Washington Health's] offices presented a direct threat to the health and safety of others, including [Washington Health's] staff, physicians, and other patients." ECF

---

[5] The "same analysis applies for a direct threat pursuant to the Rehabilitation Act and the ADA[.]" *Haas v. Wyoming Valley Health Care Sys.*, 553 F. Supp. 2d 390, 392 (M.D. Pa. 2008) (cleaned up).

32, p. 6. It also argues that its "mask policy was a legitimate safety requirement during the COVID-19 pandemic." *Id.* Washington Health has not met its burden for summary judgment on either defense because there is no evidence that it made the required individualized determination.

To meet its burden, Washington Health offers that "[a]fter [Ms. Ames's] arrival to the office without a mask, Dr. Parker made an individual assessment of the risk of allowing [Ms. Ames] to be seen in the office as opposed to enforcing the policy." ECF 30, p. 10. In support, Washington Health cites only to a portion of Dr. Parker's deposition testimony. *See id.* But Dr. Parker did not testify that she made any kind of ***individualized*** assessment of the threat posed by Ms. Ames at her deposition. When asked directly what she did, Dr. Parker testified as follows:

> Q: Any way you can quantify what your thought process was[?]
>
> A: I would say that the risk of Corona virus affecting our office and our patients and specifically my staff was higher for a patient who presented without a mask than a patient with a mask.
>
> Q: And was that the extent of the analysis that you did?
>
> A: Yes.

ECF 28-10, 15:4-12. Notably absent from that exchange is any mention of Ms. Ames and the specific threat that she may have posed. Dr. Parker's testimony, instead, focused on generalized statements about masked versus non-masked patients.[6] That

---

[6] It's not clear that Dr. Parker even made the decision to not allow Ms. Ames to be seen without a mask. Eric Brinkhoff, Washington Health's practice manager, testified that Dr. Parker "had really very little or anything" to do with it. ECF 28-11, 13:16-21. He also stated that no one, not even Dr. Parker, was "qualified" to make any kind of individualized assessment of the risk presented by a mask-less Ms. Ames. *Id.* at 12:14-20. As a result, the practice just decided to "stick to the policy." *Id.* at 12:21-23.

...
...

is not enough.[7]

Thus, Washington Health is not entitled to summary judgment on its safety defenses to Ms. Ames's Rehabilitation Act claim.

## **CONCLUSION**

For the reasons above, the Court will grant in part and deny in part Washington Health's motion for summary judgment. An appropriate order follows.

DATED this 6th day of October, 2021.

BY THE COURT:

/s/ J. Nicholas Ranjan
United States District Judge

---

[7] Washington Health relies heavily on this Court's decision in *Pletcher v. Giant Eagle, Inc.*, No. 20-754, 2020 WL 6263916 (W.D. Pa. Oct. 23, 2020) (Fischer, J.), to argue that even though Washington Health failed to perform any kind of individualized assessment of the threat Ms. Ames posed, it is still entitled to summary judgment on its "legitimate safety requirement" and "direct threat" defenses. ECF 30, pp. 10-12. This reliance is misplaced, however, because in *Pletcher*, the Court did not evaluate the legitimate safety requirement or direct threat defenses raised by the defendant in that case. *Pletcher*, 2020 WL 6263916, at *5. The Court resolved that case on other grounds.